# SETTLEMENT AGREEMENT AND GENERAL AND SPECIFIC RELEASE

This Settlement Agreement and General and Specific Release is made and entered into this _____ day of December, 2006, by and between Shawn Reaves (hereinafter referred to as "Reaves") and Wildcat Investments, L.L.C. and B & B Foods, L.L.C., their parent companies, subsidiaries, divisions and affiliates, predecessors, successors and assigns, officers, directors, their employees, agents and representatives (hereinafter collectively referred to as the "Companies".)

WHEREAS, Reaves filed against the Companies a Complaint with the U.S. Department of Labor (Complaint No. _____) and a lawsuit in the United States District Court for the Middle District of Alabama (Case No. 3:05-CV-900-WKW) alleging violations of the Fair Labor Standards Act.

WHEREAS, the Companies expressly deny all of the allegations contained in Reaves' Complaints and the Companies expressly maintain their position that no violations of the law as contemplated by the aforesaid Complaints have occurred nor have any violations of the law occurred concerning Reaves, statutory or otherwise; and

WHEREAS, the Companies and Reaves wish to resolve the expense and disruption of continued and further litigation between them by amicably entering into this full and final settlement.

NOW, THEREFORE, in consideration of their mutual promises as set forth herein with their intention to be mutually and legally bound hereby, the Companies and Reaves covenant and agree as follows:

1. Reaves agrees that at the time of the payment of the settlement proceeds that he will seek to withdraw his Complaint with the U.S. Department of Labor, dismissing with prejudice Complaint No. _____. Reaves also agrees that at the time of the payment of the settlement proceeds that he will withdraw his Complaint pending in the U.S. District Court for the Middle District of Alabama, dismissing with prejudice Case No. 3:05-CV-900-WKW.

2. The Companies do not admit that they have failed to pay Reaves all wages due and owing to him, discriminated against, harassed, retaliated against or otherwise infringed upon the

legal rights of Reaves or that they have any liability to Reaves for any reason whatsoever, and entry into this Agreement shall not constitute any admission or evidence of unlawful conduct. However, in the exercise of its business judgment, and solely to settle the claims of Reaves, the Companies will pay a total of forty five thousand dollars and no cents ($45,000.00) to Reaves and his attorneys. The Companies will distribute the settlement payment in the following manner: one check will be issued to Reaves for the lump sum amount of Eleven Thousand Two Hundred and Fifty Dollars ($11,250.00) less appropriate payroll withholdings representing lost wages to Reaves on or before January 15, 2007; one check will be issued to Reaves for the lump sum amount of Eleven Thousand Two Hundred and Fifty Dollars ($11,250.00) representing damages on or before January 15, 2007; one check will be issued to Wiggins, Childs, Quinn & Pantazis, LLC., in the Amount of Twenty-Two Thousand and Five Hundred Dollars ($22,500.00) on or before January 15, 2007.

3.      Reaves and the Companies expressly acknowledge and agree that the above consideration is in full and final settlement of Complaint No. _____ and Case No. 3:05-CV-900-WKW with each party paying their own attorneys fees and costs, upon the execution of this Agreement.

Reaves represents and covenants that he will not seek any of his costs, disbursements or attorneys' fees from the Companies. In further consideration of the above payment, Reaves agrees and covenants never to seek, accept or make future application for employment or re-employment with the Companies or any of its divisions, locations or subsidiaries.

4.      Reaves acknowledges and agrees that he alone will be solely responsible for the payment of any and all federal or state income taxes, which might be due and owing as a result of the payment outlined in the agreement. Reaves further agrees to indemnify and hold the Companies harmless from any damages, claims, demands, deficiencies, levies, assessments, executions, judgments or recoveries by any governmental entity against the Companies for any amounts claimed due from Reaves on account of this Agreement or claims made under any federal, state or local tax laws for any taxes claimed to be payable by Reaves.

5.      In consideration of the parties' mutual agreement to settle and the foregoing consideration by the Companies, Reaves represents and covenants that he, as well as his heirs, executors, administrators, agents and assigns hereby acquit, release and forever discharge the

Companies of and from all causes of action, claims and demands of any kind or character, whether known or unknown at law or in equity, or before any agency or commission of local, state or federal governments, that he ever had or now has against the Companies on account or by reason of any event occurring up to and including the date of this Agreement, and also including, but not limited to, any event alleged or relating to his employment with and termination from the Companies.

6.     Specifically included among the claims hereby waived by Reaves, his heirs, executors, administrators, agents and assigns, but without limitation, are any and all claims for wages, commissions or other compensation of any other kind relating to or arising from Reaves's employment with the Companies, including any claim for retaliatory discharge, wrongful discharge, defamation, refusal to hire, any action arising from Reaves's employment or separation therefrom under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sec. 2000e, et seq., the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. Sec. 12101, et seq., the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. Sec. 201, et seq., the Employee Retirement Income Security Act of 1974, as amended, the Federal Rehabilitation Act of 1973, as amended, the National Labor-Management Relations Act, the Federal Occupational Safety and Health Act, the Employee Polygraph Protection Act, any claim for breach of an oral or written contract, any claim for intentional infliction of emotional distress, assault, battery, and any claim under any other applicable federal or state statute, authority, law, or municipal ordinance providing a cause of action as to Reaves's employment with the Companies and/or his separation therefrom against the Companies.

7.     The Companies and Reaves specifically agree that their execution of this Agreement resolves all claims by all parties for attorneys' fees, costs and expenses.

8.     Except as expressly set forth below, Reaves agrees that the terms and amount of this Settlement Agreement and General and Specific Release shall be strictly confidential. Reaves agrees that he shall not disclose any information whatsoever concerning this Settlement Agreement and General and Specific Release to anyone, including, but not limited to, past, present and future employees of the Companies. Reaves may divulge the contents of this Settlement Agreement and General Release only to his spouse, attorneys, and tax preparer. Reaves shall also be responsible for ensuring that the terms of the Settlement Agreement and General and Specific Release are not disclosed by his spouse, attorneys or tax preparer. This paragraph eight (8) may be enforced

3

through an independent action for an injunction and liquidated damages in the amount of ten percent (10%) of the settlement amount if the violation is proven in a court of competent jurisdiction.

9.  The Companies and Reaves expressly acknowledge that the Settlement Agreement and General and Specific Release is intended to include in its effect, without limitation, all claims of any kind or character which have arisen and of which Reaves knows or should have known, had reason to know or suspects to exist in his favor at the time of the execution hereof, concerning his employment with the Companies or separation therefrom, and that this Settlement Agreement and General and Specific Release contemplates the extinguishment of any such claim or claims of Reaves.

10. This Settlement Agreement and General and Specific Release shall in all respects be interpreted, enforced and governed under the laws of the State of Illinois.

11. Should any provision of this Settlement Agreement and General and Specific Release be declared or be determined by any court or agency to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby, and said illegal and invalid provision or term shall be deemed not to be part of the Agreement.

12. This Settlement Agreement and General Release sets forth the entire Agreement between the parties hereto, and fully supersedes any and all prior agreements or understandings between the parties hereto pertaining to the subject matter hereof.

IN WITNESS WHEREOF, and intending to be legally bound hereby, The Companies and Reaves have executed the foregoing Settlement Agreement and General Release.

Dated: _____   By: _____
                                              **SHAWN REAVES**

                                          **WILDCAT INVESTMENTS, L.L.C.**

Dated: _____   By: _____
                                              Gregg Majewski

4

Title: _____

**B & B FOODS, L.L.C.**

Dated: _____      By: _____
      Gary Wackerlin

Title: _____